IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KENNETH LEE WILLIAMS, ) | Civil Action No. 3:12-1821–MGL-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 4, 2009 (protective filing date), alleging disability as of July 8, 2008. Tr. 162. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 19, 2011, at which Plaintiff and a vocational expert ("VE") appeared and testified. Tr. 34-69.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

The ALJ issued a decision on May 12, 2011, finding Plaintiff was not disabled because work existed in the national economy which he could perform.[2]

Plaintiff was forty-five years old at the time of the ALJ's decision. He has a high school education with one year of college. Tr. 38. Plaintiff has past relevant work as a delivery driver and a truck driver. Tr. 26, 167. Plaintiff alleges disability due to migraine headaches, upper and lower back pain, knee pain, arthritis, elbow and joint pain, and post-traumatic stress disorder ("PTSD"). Tr. 166, 202.

The ALJ found (Tr. 16-28):

1.  The claimant meets the insured status requirements of the Social Security Act through December 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since July 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: migraine headaches; tinnitus; cervical spine spondylosis; post-concussive syndrome; right knee patellofemoral syndrome; lumbosacral strain; mild SI joint sclerosis; post traumatic stress disorder (PTSD); and depressive disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift, carry, push and/or pull 10 pounds occasionally and 5 pounds frequently, sit for a total of 6 hours out of an 8-hour day, and stand and walk for a total of 2 hours out of an 8-hour work day with normal breaks and a sit/stand option at the work station. The claimant can occasionally climb ramps and stairs, stoop and kneel, but he can never climb ladders, ropes or scaffolds,

---

[2]Plaintiff asserts that (but did not attach a copy of the decision), pursuant to a subsequent application for benefits, he was approved for disability benefits as of May 13, 2011. ECF No. 25.

> balance for safety, such as on dangerous or slippery surfaces, crouch or crawl. The claimant can frequently reach and should avoid concentrated exposure to noise, vibrations, fumes, dust, odors, gases, poor ventilation and sunlight. He should not work around hazards, such as unprotected heights or dangerous moving machinery. The claimant can perform simple, routine, repetitive tasks. Additionally the claimant can occasionally interact with co-workers, supervisors and the public but he must not work in coordination with others; however, he can work in proximity to all of these individuals throughout the work day.

> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

> 7. The claimant was born on December 30, 1965, and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2008, through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied Plaintiff's request for review on May 1, 2012 (Tr. 1-3), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on July 2, 2012.

3

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Plaintiff was seen at Beaufort Naval Hospital on June 19, 2008 for complaints of headaches and neck and elbow pain from a blast injury by an improvised explosive device which occurred during his deployment to Iraq. On examination, Plaintiff had abnormal movement of all extremities with limited flexion and extension of his left elbow. Tr. 289-290.

On July 14, 2008, x-rays of Plaintiff's right knee and lumbar spine taken at the Charleston Veterans Administration Medical Center ("VAMC") were unremarkable. Tr. 285. Medical records of the same date show that Plaintiff was taking Ibuprofen for pain, which he stated helped temporarily. Tr. 284. Imaging of Plaintiff's cervical spine of August 21, 2008, revealed mild disc space narrowing at C6-7, with mild stenosis at C6-7 and C7-TI. Tr. 312-313. On September 4, 2008, it was noted that the only pain medication Plaintiff was taking was Ibuprofen. Tr. 283. Neurological testing at Coastal Neurology was conducted on November 17, 2008, and it was noted to be "probably

4

normal." Tr. 261. Plaintiff underwent an MRI of his brain which showed no acute abnormalities. Tr. 271.

Plaintiff sought evaluation by Coastal Neurology on December 2, 2008 for complaints of headaches and dizziness. Medical notes indicate Plaintiff had 5/5 muscle strength in all major muscle groups with an intact gait. Plaintiff was prescribed Elavil to help him with problems he had sleeping. Tr. 259-260. Plaintiff returned for follow-up on December 29, 2008, and it was noted that he complained of chronic daily headaches, and had 5/5 muscle strength in all major muscle groups. His prescription for Elavil was increased. Tr. 258.

At a physical therapy follow-up evaluation on January 2, 2009, it was noted that Plaintiff ambulated into the clinic without an assistive device; ambulated without an antalgic gait; and denied numbness, tingling or radiating pain. Plaintiff was instructed to continue with physical therapy and return for follow-up after his seventh therapy session. Tr. 303-304.

On January 22, 2009, Plaintiff sought evaluation of his symptoms of sleeping problems and flashbacks with Dr. Angela Court, a VAMC psychiatrist. Plaintiff complained of increased anxiety, irritability, difficulty concentrating, and difficulty sleeping. Dr. Court performed a mental status examination, and found Plaintiff was cooperative; spoke with normal rate, tone, and volume; had goal-directed thought processes; and exhibited fair judgment. Dr. Court also found that Plaintiff had an anxious mood, a constricted affect, and poor insight. Plaintiff was diagnosed with PTSD with avoidance and arousal symptoms of a mild to moderate degree. Fluoxetine (Prozac) was prescribed for Plaintiff's PTSD, and Trazadone was prescribed to help him with his sleep. Plaintiff was encouraged to increase his level of activity, and to continue to seek employment. Tr. 349-353.

5

On March 20, 2009, Plaintiff was seen at the VAMC by Dr. Daniel Gros, a psychologist. Plaintiff reported he typically avoided stores, restaurants, and movie theaters, but agreed to continue "exposure exercises." He said he was compliant with his medications. Tr. 406-408. He reported completing two exposure exercises (trips to Walmart), but was unable to successfully fight through his anxiety. Tr. 405-406.

Notes of Dr. Court from March 2009, reflect Plaintiff was a "no show" for a March 27, 2009 appointment. Tr. 403. At his rescheduled March 30, 2009 appointment, Plaintiff said he was "alright," but also reported continued poor sleep, heightened arousal and anxiety, and reluctance to be in large crowds, except at church. Dr. Court noted that Plaintiff's medication use was intermittent. Tr. 401-403. On April 23, 2009, Plaintiff reported he failed to complete any recommended exposure exercises because he was "too busy." Tr. 393-395.

On April 15, 2009, Plaintiff saw an audiologist for a hearing test and examination of his tinnitus. Tr. 346. The hearing tests demonstrated that Plaintiff had a 96 percent (very good) word discrimination capability. The testing demonstrated that Plaintiff had some mild hearing loss at the high end in both ears, beyond the range of normal speech. Tr. 346. On April 20, 2009, physical therapy reported that Plaintiff was able to lift 50 to 60 pound weights. Tr. 397. On May 7, 2009, Dr. Gros noted that Plaintiff reported completing several exposure exercises (eating out, going to a movie, and going to a track meet). Although Plaintiff reported he experienced significant anxiety, he reportedly was able to "fight though it." Tr. 391-392.

Plaintiff received a disability rating from the VA on May 18, 2009 of 70 percent as of July 29, 2008, and 80 percent as of January 22, 2009. Tr. 778.

On June 1, 2009, Plaintiff saw Dr. Court for medication management. Tr. 389-390. Dr. Court performed a mental status examination, and noted that Plaintiff was cooperative; spoke with a normal rate, tone, and volume; and had goal-directed thought processes and fair judgment. She also noted he had an anxious mood and poor insight. He reported enrolling for vocational rehabilitation with hopes of studying construction management. Plaintiff also expressed a desire to return to therapy because challenging his anxiety alleviated some of his symptoms. Tr. 389-390. Although Plaintiff set an appointment with Dr. Gros for June 25, 2009 (Tr. 379), there is no record he attended the appointment.

Plaintiff requested additional physical therapy for back pain in June 2009, stating he obtained relief from past physical therapy treatment. Tr. 326. Plaintiff showed up twenty-five minutes late for his August 2009 appointment with Dr. Court and could not be accommodated. She noted he had a "pattern of presenting late for scheduled appointments." Tr. 370.

Plaintiff saw Dr. Court again on October 14, 2009 and reported a continued state of heightened arousal, noting memories of Iraq and nightmares. Plaintiff reported not using his Fluoxetine regularly, and having more headaches. Plaintiff reported taking business classes through vocational rehabilitation, but complained of impaired concentration. Dr. Court assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60.[3] Tr. 359-360.

---

[3]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in
(continued...)

Plaintiff returned to see Dr. Court on December 4, 2009, complaining he was overwhelmed and stressed, and could not concentrate. He expressed frustration with his reserve duty, complaining it increased his distress about Iraq. Tr. 358-359. On April 5, 2010, Plaintiff reported nightmares two to three times a week, trouble sleeping, not being able to concentrate, and a failure to consistently take his medications. Tr. 469-470. On April 21, 2010, Plaintiff stated that he had not noticed any change since taking the prescribed medications. Tr. 469. On July 20, 2010, Plaintiff saw Dr. Court and reported that he tried to work, but had difficulty with his supervisors and their authority. He went to work late after oversleeping and had difficulty getting going. Plaintiff reported being depressed and unable to concentrate. He did state that Fluoxetine reduced his worry such that he was able to function better. Tr. 571

On April 12, 2010, Plaintiff saw Dr. Leland Stoddard for a consultative physical examination. Tr. 461-462. Dr. Stoddard examined Plaintiff and noted that he had a normal gait and good grip strength, but had pain with movement in his neck and lower spine. Tr. 461. Dr. Stoddard opined that Plaintiff was substantially disabled from most moderate to heavy occupations and that PTSD might disable him further from lighter duties. Tr. 462.

On April 22, 2010, Dr. Cashton B. Spivey, a psychologist, performed a consultative evaluation. Plaintiff reported feelings of depression, sleep disturbances, with difficulty falling asleep, and nightmares. It was noted Plaintiff experienced hypervigilance and anxiety. Dr. Spivey estimated that Plaintiff's general intelligence score fell in the average to low average range. His affect was mildly blunted and his speech was mildly slow. He diagnosed Plaintiff with depressive disorder,

---

[3](...continued)
social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

PTSD, migraines, and socialization problems. His GAF was assessed as 45, with a score of 55 over the past 12 months. Dr. Spivey concluded that Plaintiff's Mini-Mental State Examination yielded a score of 26 out of a possible 30, which fell within normal limits. Tr. 483-485.

On May 4, 2010, Dr. Michael Neboshick, a State agency psychologist, reviewed the record and opined that Plaintiff could understand and remember simple instructions; sustain attention for simple, structured tasks for two hour periods; adapt to changes if they were gradually introduced; make simple work-related decisions; work in the presence of others; and accept constructive supervision. He opined that Plaintiff would work best in settings without much direct, ongoing interaction with the public. Tr. 501-503.

On May 26, 2010, Dr. Jean Smolka, a state agency physician, opined that Plaintiff could lift twenty pounds regularly and ten pounds frequently, and could sit for six hours and stand and/or walk for six hours in an eight-hour workday. She further opined Plaintiff was limited to never climbing ladders, ropes or scaffolds; occasionally stooping, kneeling, crouching, and crawling; and frequently reaching overhead. Dr. Smolka thought that Plaintiff should avoid concentrated noise, vibration, fumes, odors, dusts, gases, and poor ventilation due to migraine headache symptoms and dizziness. She opined that Plaintiff should avoid even moderate exposure to hazards due to dizziness. Tr. 507-513. On August 19, 2010, state agency physician Dr. Mary Lang concurred with Dr. Smolka's opinion. Tr. 712-719.

On August 19, 2010, Dr. Olin Hamrick, Jr., a State agency psychologist, opined that Plaintiff would have no difficulty understanding, remembering, and carrying out detailed instructions; performing simple, repetitive tasks without special supervision; and could attend work regularly and accept supervisory feedback. He thought Plaintiff would occasionally miss a day of work due to his

9

psychological symptoms and would have difficulty working in close proximity or coordination with coworkers. Dr. Hamrick also opined that Plaintiff was best suited for a job with no continuous interaction with the general public. Tr. 720-722.

On February 16, 2011, Plaintiff saw Dr. Court complaining that he was having more depressed feelings. Although he reported taking his medications intermittently/regularly, he had not refilled his Fluoxetine since September or his Divalproex (Depakote) since November. Plaintiff was encouraged to increase his activity levels. Tr. 757.

After the ALJ's decision (in May 2011), Plaintiff submitted additional medical records to the Appeals Council. Tr. 781-818. On August 24, 2011, Dr. Court noted that Plaintiff missed several appointments. Plaintiff reported he was taking his medications more regularly (although it was noted he had not refilled his thirty-day supply of Fluoxetine or Depakote between May 4 and August 24, 2011), and spent time with his children (including doing activities outside and walking them to school). Plaintiff noted occasional nightmares, and being discouraged by continued pain. Tr. 795-796.

On September 21, 2011, Dr. Andrew Perry, a psychologist, noted that Plaintiff had a PTSD compensation examination on October 6, 2010. Dr. Perry noted that he was requested to provide an opinion whether or not Plaintiff's inability to sustain employment was due to his PTSD. He opined that "PTSD is the major contributor to [Plaintiff's] inability to maintain stable employment, but PTSD is not the sole factor." Dr. Perry noted that Plaintiff's chronic pain, from migraine headaches and back pain, and physical limitations due to spinal problems also interfered with Plaintiff's occupational functioning. Tr. 786-787. On October 17, 2011, Dr. Perry reiterated his September 21,

2011 opinion. Tr. 782. X-rays of Plaintiff's left elbow and right knee were unremarkable in November 2011. Tr. 817-818.

## HEARING TESTIMONY

Plaintiff testified that he did some work in the Army Reserves through the middle of 2010. Tr. 40- 42, see 135. He stated he worked for Beaufort County from March 2010 to June 2010 as a truck driver and head equipment operator, and was terminated for having his vehicle somewhere it was not supposed to be during working hours. Tr. 42-43, see Tr. 126, 135.

When asked about evidence of his inconsistent use of medication, Plaintiff testified that he never liked to take medication, but came to the conclusion that he needed to take it. Tr. 44-45. He stated that his pain medication eased his pain and his Fluoxetine helped sometimes. Tr. 45. He stated he had headaches on almost a daily basis, which lasted for the whole day. Tr. 53. He testified that the exposure therapy made him feel bad, and that he stopped because he felt like it was doing more damage to him than actually helping him. Tr. 55.

Plaintiff described problems with his right knee, elbow, back, neck, hearing, and dizziness. See Tr. 56-64. He testified that he could not even walk for ten minutes before experiencing pain and having to sit down, and felt discomfort while sitting. Tr. 60-62.

Plaintiff said he tried to help his wife with their six children, but it was a struggle because of his medications. He testified that occasionally he helped make meals and did laundry. He tried to help his older children with homework, but he could not concentrate (which he reported was the reason he dropped out of classes). Tr. 39.

Plaintiff testified he napped three to four times a day for ten to twenty minutes at a time because of his difficulty sleeping at night. Tr. 63. He stated he did not watch much television, went to church occasionally, and did not have any friends. Tr. 64-66.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's residual functional capacity ("RFC") findings concerning the sit/stand option were not specific enough to determine whether there is still work that he can perform; (2) the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") as required by SSR 00-4p; (3) the ALJ failed to properly explain the weight assigned to the opinion evidence (physician and psychologist opinions and the VA disability rating); and (4) the ALJ failed to properly evaluate Plaintiff's credibility. The Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence[4] in the record as a whole, and should be affirmed; the ALJ reasonably considered and assigned weight to the VA disability rating and the various medical source opinions; the VE's testimony was substantial evidence upon which the ALJ could rely; and the ALJ reasonably found that Plaintiff's subjective complaints were not credible.

Plaintiff alleges that the ALJ failed to follow SSR 96-9p which requires that a sit/stand option be specific in terms of length and duration. He argues that the ALJ's RFC findings were not specific

---

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

12

enough to allow a determination as to whether there is still work he can perform. Plaintiff also argues that the VE did not supply information regarding the erosion of jobs available due to the sit/stand option because the frequency of the need to alternate sitting and standing and length of time needed to stand were not identified. The Commissioner contends that the ALJ's inclusion of the requirement of a "sit/stand option at the workstation" was specific enough. Additionally, the Commissioner argues that Plaintiff's speculation that the number of jobs available would be eroded is unsupported and the VE's testimony supports that there is no erosion.

> SSR 96-9p provides, in part:
>
> Where [the need to alternate sitting and standing] cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p.

In his decision, the ALJ found that Plaintiff's RFC included the need for a sit/stand option at the work station. Tr. 19. In his first hypothetical, the ALJ did not include a sit/stand restriction. The VE identified jobs which a claimant could perform based on a hypothetical that did not include a sit/stand restriction. Tr. 67-68. The ALJ then added to his hypothetical that the claimant would need a sit/stand option at his workstation. In response, the VE stated that the claimant could still perform the identified jobs. Tr. 68.

The Commissioner, citing Thompson v. Astrue, 442 F. App'x 804, 806 (4th Cir. 2011), argues that the plain language of the ALJ's limitation expresses an ability for Plaintiff to remain in his workstation regardless of his postural requirements. Thompson is distinguishable from this action,

however, as that case never proceeded to Step Five[5] because the ALJ found at Step Four that the claimant could perform her past relevant work. Thompson, 442 F. App'x at 807. SSR 96-9p was thus not applicable. Id. The Fourth Circuit did note that the ALJ's RFC findings and hypothetical as to the claimant in Thompson were consistent with an at-will sit/stand option such that no greater specificity was required. Id. In the present case, however, it is unclear whether an "at will" sit/stand option can be implied from the ALJ's RFC finding and the hypothetical to the VE. At the hearing, Plaintiff's only testimony as to the need to alternate positions was his testimony that he could not sit too long without readjusting his body or standing, which the ALJ appears to have as meaning Plaintiff could only sit for "a very short time." See Tr. 21, 59, 61. The ALJ discounted Plaintiff's credibility, however, such that it is unclear the frequency of Plaintiff's need to alternate sitting and standing. Thus, it is recommended that this action be remanded to determine the requirements of Plaintiff's sit/stand option pursuant to SSR 96-9p, and to determine if there are a significant number of jobs in the national economy which Plaintiff can perform based on his RFC.[6]

Because it is recommended that this action be remanded for further clarification as to Plaintiff's need to alternate sitting and standing, the undersigned declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner

---

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

[6]It is not necessary to address Plaintiff's arguments concerning conflicts between the jobs identified by the VE and a conflict with the DOT. If this action is remanded to obtain new VE testimony, it will allow Plaintiff's counsel to cross-examine the VE concerning any conflicts between any jobs identified by the VE and the DOT.

should take into consideration Plaintiff's remaining allegations of error and consider all of the evidence (including evidence that was submitted to the Appeals Council). In particular, the ALJ should evaluate Plaintiff's VA disability rating in light of the Fourth Circuit's recent decision (which was after the time of the ALJ's decision in this action) in Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir.2012).  In Bird, the Fourth Circuit held that:

> [T]he SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d at 343.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence.  This action should be remanded to the Commissioner to specify the length and duration of the sit/stand option, consider all of the evidence (including evidence that was submitted to the Appeals Council), evaluate Plaintiff's VA disability ratings, and consider Plaintiff's remaining allegations of error.

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

June 26, 2013
Columbia, South Carolina